fraudulent and void as to creditors, unless the possession bonā fide accompany and follow the deed; but if rhe goods, at the date of the deed, were actually delivered to the grantees for a valuable consideration, and then taken possession of by one of the grantors, who was bonā fide the known agent of the grantees, and who, as such, received and exercised exclusive possession bonā fide, publicly and notoriously, for the sole use and benefit of the grantees, so that the change of possession was notorious and unequivocal, such possession was not inconsistent with the deed, and did not make it fraudulent and void, as to the creditors of the grantors. But if the possession remained with the grantors jointly, although the said agent was one of the grantors, such possession was inconsistent with the exclusive possession of such agent, and was not such a possession as gave effect to the deed, as a valid deed against the creditors of the grantors.

Trespass [by E. & E. Reed against Daniel Minor] for levying a fieri facias upon the plaintiffs' property, for the debt of Silas and David Reed.

The defence was, that the deed from Silas and David Reed to the plaintiffs was fraudulent and void as to the creditors of the said S. and D. Reed.

Upon the prayer of Mr. Jones and Mr. Taylor, for the defendant, THE COURT (MORSELL, Circuit Judge, absent) instructed the jury, that if the possession of the property remained with the grantors, (the deed being in form absolute, and purporting to convey all the household furniture, and all the stock in the shoe business,) the deed was fraudulent as to the creditors of the grantors.

But THE COURT, at the prayer of the plaintiffs, also instructed the jury, that if the goods were delivered to the plaintiffs at the date of the deed, and that the said David Reed was bonā fide their known agent, and, as such, received and exercised exclusive possession bonā fide, publicly and notoriously, for the sole use and benefit of the plaintiffs, so that the change of possession from the grantors to the grantees, or their agent, was notorious and unequivocal, then such possession was not inconsistent with the deed, and did not make it fraudulent and void, as to the creditors of the said Silas and D. Reed.

THE COURT, also, at the prayer of the defendant, instructed the jury, in effect, that if the possession remained in Silas and David Reed, such possession was inconsistent with the exclusive possession of David Reed as agent of the plaintiffs, and that such possession, and evidence of agency, are not sufficient to establish such agency and possession in David Reed as to give effect to the sale and delivery contended for by the plaintiffs to support this action.

REED (MORSE v.). See Case No. 9,860.

## Case No. 11,648.

### REED v. NELSON.

[Cited in Reed v. Smith, 40 Fed. 885. Nowhere reported; opinion not now accessible.]

## Case No. 11,649.

### REED v. The NEW HAVEN.

[18 How. Prac. (1860) 482.]

District Court, D. New York.[1]

COLLISION— LOOKOUT — STEAMER MEETING SAIL VESSEL.

1. *Held*, that the rules of law for the government of steamers in respect to a lookout, are well settled, and are of stern necessity.

2. The steamboat did not have such a lookout as is required by the law ([St. John v. Paine] 10 How. [51 U. S.] 585), and, by that failure, a prima facie case is made out against her, which stands, unless rebutted by clear and satisfactory proof.

3. It is the duty of a sailing vessel, meeting a steamboat, to hold her course, and of a steamboat, to avoid her. [St. John v. Paine] 10 How. [51 U. S.] 583; [The Genesee Chief v. Fitzhugh] 12 How. [53 U. S.] 463.

4. Upon the facts, both vessels were mistaken as to the course of the other, as, instead of being on parallel lines, they were crossing each other's track.

5. It was an error in the pilot of the steamer not to have known the true course of the sloop, and to have proceeded with unslackened speed.

6. The sloop had the right to keep her course, and also a right, when she had good reason to apprehend a collision, as the steamer had taken no measures to avoid it, to endeavor herself to escape from it, and if, in making such attempt when peril was threatening, she did not adopt the most judicious course, such error of judgment would not be charged against her as a fault. The Genesee Chief, 10 How. [51 U. S.] 443.

7. The evidence in the case does not rebut the prima facie case made out against the steamer, by her failure to have the lookout required by the rules of law, but rather strengthens it and she must be held liable for the damages.

[Libel in admiralty by William D. Reed against the steamboat New Haven for collision. The New York & Erie Railroad Company appeared as claimants.]

D. McMahon, for libellant.

W. R. Bebee and D. B. Eaton, for claimants.

INGERSOLL, District Judge. The libellant, the owner of the sloop George M. Dallas, files his libel against the steamboat New Haven, to recover the damages which the Dallas sustained by a collision with a barge in tow of the steamboat, on the night of the 7th day of May, A. D. 1855. The collision took place at about ten or eleven o'clock at night, a little below Piermont dock, on the North river, and about twenty-five miles from New York. The night was dark and cloudy. Sailing vessels could not be descried at a greater distance than a half or three-quarters of a mile, and at that distance could be seen but imperfectly. The shores of the river—it being, where the collision took place, about two miles wide—could not be distinctly seen. The wind, at the time, was about east-south-east. The course of the river

[1] [Affirmed in Case No. 5,338.]